# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TREVOR LITTLE,

    *Petitioner*,

    v.

KATHLEEN HAWK SAWYER, Director of the Federal Bureau of Prisons,[1]

    *Respondent.*

Civil Action No. 18-436 (RDM)

## MEMORANDUM OPINION AND ORDER

Petitioner, Trevor Little, proceeding *pro se*, is a federal prisoner who is currently serving a 30-year sentence and is confined at the U.S. penitentiary in Leavenworth, Kansas. *See* Dkt. 1 at 2; Dkt. 33. Little alleges that the Federal Bureau of Prisons ("BOP") has miscalculated his "Good Conduct Time," resulting in a scheduled released date that, in his view, is 86 days later than required. *Id.* In an effort to remedy this alleged error, Little sent a series of letters to BOP officials requesting that the BOP correct his good conduct time calculation. *Id.* at 1–3. Over five months passed, and no BOP official responded to Little's letter. *Id.* at 2. The agency's non-response prompted Little to file this petition for a writ of mandamus, which seeks to compel the BOP to respond to his letter and to correct his good conduct time calculation. *Id.* at 5–6. The BOP has moved to dismiss the petition for failure to state a claim. Dkt. 30. For the reasons set forth below, the Court will **GRANT** the motion to dismiss, but will do so for lack of jurisdiction

---

[1] Current Director of the Federal Bureau of Prisons Kathleen Hawk Sawyer is substituted for former Director Mark Inch pursuant to Fed. R. Civ. P. 25(d).

and not—as the BOP proposes—for failure to state a claim. The Court will allow Petitioner, should he so choose, to file an amended petition within sixty days.

## I. BACKGROUND

Accepting all of the allegations in the petition as true for purposes of the BOP's motion to dismiss, the facts are as follows: In 1996, Petitioner was convicted of four federal drug charges and sentenced to life in prison. *See* Dkt. 1 at 1–2. In 2016, the sentencing court reduced Petitioner's sentence to 30years "with time credited to date" because his original sentence was "based on a sentencing range that [w]as subsequently [] lowered by the Sentencing Commission." *Id.* at 2 (citing 18 U.S.C. § 3582(c)(2)). In Petitioner's view, his reduced sentence, along with a correct calculation of his good conduct time, "produces a release date of . . . January 29, 2022." *Id.* at 3. The BOP, however, has calculated a release date of April 22, 2022—86 days later than the date Petitioner has proposed.[2] *Id.* at 4.

Upon discovering this discrepancy, Petitioner brought the purported miscalculation to the attention of the Federal Correctional Institution in Ashland, Kentucky, where he was confined at the time. *Id.* at 2. Either because he received no response or because he was dissatisfied with whatever response he did receive, "Petitioner later wrote a letter to the Chief, Designation and Sentence Computation Center Director . . . explaining that his sentence was incorrectly []calculated." *Id.* "When no answer was returned to Petitioner, he wrote a[] letter to the Bureau of Prisons Central [R]egional Director," again explaining that his good conduct time had been

---

[2] Petitioner's theory is that the BOP's 86-day reduction in his good conduct time is incorrect because the BOP adjusts for misconduct that occurred while he was serving a life sentence. Dkt. 1 at 3. In Petitioner's view, because prisoners serving a life sentence are not eligible to accrue good conduct time, the reverse should also be true: prisoners serving a life sentence should not accrue deductions in good conduct time. Although the Court has doubts about the logic of Petitioner's theory, for present purposes the Court need not—and does not—reach the merits of Petitioner's claim.

miscalculated. *Id.* at 6. Five months passed, and Petitioner received no response from the BOP. *See id.* (alleging that the letter was sent to the Director "in September 2017"). Petitioner, accordingly, filed this petition for a writ of mandamus to "compel the . . . [BOP] Director . . . to act on the letter . . . [and] . . . to fix and/or correct the miscalculation of his [good conduct time] to the proper projected release date [of] January 29, 2022." *Id.* at 6. The BOP now moves to dismiss the petition for failure to state a claim upon which relief can be granted. Dkt. 30.

## II. LEGAL STANDARD

Under the Mandamus Act, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "To show entitlement to mandamus [a] plaintiff[] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Unless all three of these requirements are satisfied, the "court must dismiss the case for lack of jurisdiction." *Id.* The party seeking mandamus, moreover, "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" *N. States Power*, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988)).

## III. ANALYSIS

In support of its motion to dismiss, the BOP argues that the relief Little seeks—the recalculation of his good conduct time—is not available in mandamus because an adequate alternative remedy exists in habeas. *See* Dkt. 30 at 1–2. Petitioner does not contest this point—

3

nor could he. The law is clear in this circuit: a "prisoner must bring his claim in habeas . . . if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that habeas is the exclusive remedy for state inmates seeking the restoration of good time credit that would result in either an immediate release or a speedier release from prison). This is just such a case. Petitioner requests that the Court compel the BOP to "fix and/or correct the [alleged] miscalculation of his" good conduct time, which would result in his release from prison 86 days earlier than otherwise.[3] Dkt. 1 at 6.

Recognizing that he cannot obtain that relief in mandamus, Petitioner, in his opposition to the BOP's motion, clarifies that his petition is seeking only to compel the BOP "to answer his . . . letter [inquiring] as to why 86 [g]ood [c]onduct days were taken away" from him. Dkt. 33 at 1; *see also id.* ("It is evident that government misl[e]d this court for some time having the court to believe that Petitioner is foolish enough to ask this court to grant [good conduct time] . . . for days that the [BOP] took away from the Petitioner during his prison sentence."). In response, the BOP argues that, even construed as such, Petitioner's claim must fail because the BOP has no "duty to answer grievances filed by individual prisoners." Dkt. 34 at 2. Notably, the BOP has offered no support for its purported lack of duty and, as explained below, that premise is subject to reasonable dispute. Even still, the Court must credit the BOP's argument because it is

---

[3] Inmates, at times, may bring civil actions that, in substance, are petitions for writ of habeas even when labeled as something else, and, in doing so, sometimes file in a court other than where they are incarcerated—i.e., a court that lacks venue over their habeas petition. *See, e.g.*, *Thompson v. Bureau of Prisons*, No.15-cv-1190, 2016 WL 1312003, at *3 (D.D.C. Apr. 4, 2016). In such circumstances, a court may, "in the interest of justice," transfer the case to the district where venue is proper. *Id.* at *5. Here, transfer is not "in the interest of justice," as Petitioner expressly disclaims any intent to petition for a writ of habeas corpus. *See* Dkt. 33.

4

Petitioner who bears the heavy burden of establishing "a clear and indisputable" right to relief, *N. States Power*, 128 F.3d at 758, and he has not done so here—indeed, as the BOP observes, Petitioner has not identified "any basis for such a duty." Dkt. 30 at 4.

Petitioner's failure is not totally fatal. Although Petitioner has yet to identify the basis for such a duty, much less a "clear and indisputable" duty, the BOP may, in fact, have an obligation to respond to his letters. In his opposition brief, Little asserts that he sought "an administrative remedy" from both the institution where he was confined and the "acting Director of the Bureau of Prison[s]." Dkt. 33 at 3. Though not entirely clear, it appears that Petitioner contends that he filed a request and an appeal pursuant to the BOP's Administrative Remedy Program, which allows an "inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10; *see also Pinson v. Berkebile*, 604 F. App'x. 649, 654 (10th Cir. 2015) (noting that inmates suffering the loss of good conduct time may complete an appeal through BOP's Administrative Remedy Program). Under that program, an inmate is required first to present the issue of concern "informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13. After attempting informal resolution, the inmate may submit an initial filing, 28 C.F.R. § 542.14, and may then proceed through a multi-level appeals process that culminates in an appeal to the BOP General Counsel, *see* 28 C.F.R. § 542.15. The regulations establishing the program provide that BOP officials at each respective level of the process "shall . . . [r]espond to and sign all [r]equests or [a]ppeals filed." 28 C.F.R. § 542.11(a). Under this program, therefore, the BOP at least arguably had a duty to respond to Petitioner's letters. *But see* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").

The problem is that neither Petitioner nor the BOP has meaningfully addressed the applicability and terms of the Administrative Remedy Program in their briefs or other submissions to the Court. To be sure, courts must construe *pro se* pleadings liberally. *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002). But a *pro se* litigant, like any other petitioner, cannot proceed without first carrying his burden of asserting a claim that the Court has jurisdiction to adjudicate. Because a party seeking to invoke the drastic remedy of mandamus bears the burden of proof, *see N. States Power*, 128 F.3d at 758, and because Petitioner has failed to identify a clearly established duty to act that the BOP allegedly violated, the Court will dismiss the petition for lack of jurisdiction. *See Am. Hosp. Ass'n*, 812 F.3d at 189. But because the BOP has failed to offer any support for its assertion that no such duty exists, and because Petitioner is proceeding *pro se* and is entitled to the benefit of the doubt, the Court will *sua sponte* grant Petitioner leave to file an amended petition that identifies, if possible, a clearly established duty that the BOP to respond to his letters. The BOP can then address whether, in its view, any such duty exists; if it does, whether it applies on the facts of this case; and if so, whether Petitioner's remedy lies in mandamus.

## CONCLUSION

For the foregoing reasons, the BOP's motion to dismiss, Dkt. 30, is hereby **GRANTED** and the Petition is **DISMISSED** without prejudice for lack of jurisdiction. It is further **ORDERED** that Petitioner may file an amended petition on or before January 13, 2020.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 13, 2019